UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DALE J.,<br><br>                Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. 3:18-cv-05644-TLF<br><br>ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS |

Dale J. has brought this matter for judicial review of defendant's denial of his application for supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons below, the undersigned reverses defendant's decision to deny benefits and remands for further administrative proceedings.

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 1

## ISSUES FOR REVIEW[1]

1. Did the ALJ give adequate reasons to reject opinions from two examining psychologists?

2. Did the ALJ give adequate reasons to discount plaintiff's testimony?

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI in April 2014, alleging he became disabled as of August 5, 2008. Dkt. 8, Administrative Record (AR) 15. His application was denied at the initial and reconsideration levels of administrative review. *Id.* After a hearing, an administrative law judge (ALJ) issued an unfavorable written decision on August 16, 2017. AR 15-31; *see* AR 38-88 (hearing transcript). The ALJ performed the five-step sequential analysis. AR 15-31. He determined that there were jobs existing in significant numbers in the national economy that plaintiff could perform, and therefore that plaintiff was not disabled. AR 30-31. Plaintiff filed a complaint with this Court, seeking reversal and remand for an award of benefits.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.*; *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017).

---

[1] The statement of issues in plaintiff's opening brief also assigns error to the ALJ's "fail[ure] to obtain input from an acceptable medical source before making his Step Three findings regarding Plaintiff's mental impairments." Dkt. 12, p. 2. Plaintiff acknowledges this issue was included by mistake. Dkt. 15, pp. 1-2.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* The Court considers only the reasons the ALJ identified. *Id.*

"If the evidence admits of more than one rational interpretation," the Court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "'[w]here there is conflicting evidence sufficient to support either outcome,'" the Court "'must affirm the decision actually made.'" *Id.* (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

## DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner assesses a claimant's residual functional capacity (RFC) to determine—at step four—whether the claimant can perform past relevant work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). If the claimant cannot, then the ALJ reviews—at step five—whether the claimant can adjust to other work. *Id.* The Commissioner has the burden of proof at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Commissioner can meet this burden by showing that a significant number of jobs that the claimant can perform exist in the national economy. *Id.*; 20 C.F.R. §§ 404.1520(e), 416.920(e).

A. <u>Medical Opinion Evidence</u>

Plaintiff challenges the ALJ's decision, in assessing plaintiff's RFC, to discount opinions from two examining psychologists—Holly Petaja, Ph.D., and Ellen Walker, Ph.D.—about limitations from his mental-health conditions. Because the ALJ failed to give adequate and supported reasons to discount either of those psychologists' opinions, the Court will reverse.

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 3

1. Examining Psychologist Holly Petaja, Ph.D.

Dr. Petaja evaluated plaintiff in February 2014. AR 318. She conducted a clinical interview and a mental status exam. AR 318-22. She diagnosed plaintiff with panic disorder, generalized anxiety disorder, bipolar disorder, and substance abuse disorders in remission. AR 319. She opined that plaintiff would be moderately limited in several basic work activities and markedly limited in his ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal workday and work week without interruption from his psychological symptoms. AR 320.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

Here, the ALJ rejected Dr. Petaja's opinion. AR 28. The marked limitations Dr. Petaja found were contradicted by the opinions of state agency psychological consultants. *See* AR 97-98, 109-10, 320. Accordingly, the ALJ was required to give specific, legitimate, and supported reasons to discount those opinions. *See Trevizo*, 871 F.3d at 675. The ALJ did not do so.

The ALJ rejected Dr. Petaja's opinion because, first, he found that Dr. Petaja "had little basis on which to form an opinion," having examined plaintiff only once and not having reviewed treatment notes or other records, which include "evidence of secondary gain." AR 28. (As the ALJ explained elsewhere, the record contains evidence that some providers found plaintiff's statements unreliable and motivated by a desire for shelter and drugs. AR 22-26.) The frequency of a doctor's examination and the amount and types of evidence the doctor considers

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 4

are legitimate considerations in weighing the doctor's opinion. 20 C.F.R. § 416.927(c). But an ALJ may not reject an examining opinion solely because it was based on one visit and the doctor did not review other records. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (ALJ must give specific and legitimate reasons to reject examining doctor's opinion that is contradicted). Dr. Petaja performed a psychological evaluation that included a clinical interview and mental status examination. AR 318-22. The ALJ was required to consider the opinion Dr. Petaja reached based on such objective measures. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

The ALJ rejected Dr. Petaja's opinion because, second, he found Dr. Petaja "did not provide [a] specific rationale to subs–tantiate … each limitation in her opinion." AR 28. An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also* 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). But the Commissioner provides no authority—and the Court is aware of none—that would permit an ALJ to reject an examining-source opinion because it does not articulate to the ALJ's satisfaction a separate basis for each limitation the source found.

To the extent the ALJ found that Dr. Petaja's opinion was brief, conclusory, and unsupported, substantial evidence does not support that finding. Dr. Petaja's evaluation explains the limitations she found: She noted that plaintiff "is experiencing symptoms of depression," which she described. AR 319. She found that "[t]hese symptoms are present more days than not for periods of longer than two weeks and interfere with his social and occupational functioning." *Id.* She also listed plaintiff's specific anxiety symptoms and panic attacks and found that these "interfere with his social and occupational functioning." *Id.* Noting the results of a mental status

examination, Dr. Petaja observed that plaintiff's mood was dysthymic and congruent with his description as "depressed and unstable," and that his affect was anxious; that his concentration was variable; and that his abstract reasoning and judgment were limited. AR 321-22.

Because none of the ALJ's reasons were specific, legitimate, and supported, he erred in rejecting Dr. Petaja's opinion.

2. <u>Examining Psychologist Ellen Walker, Ph.D.</u>

Dr. Walker evaluated plaintiff in July 2016. AR 1475. Like Dr. Petaja, she performed a clinical interview and mental-status examination. She diagnosed plaintiff with schizoaffective disorder, posttraumatic stress disorder, and panic disorder. AR 1480. She opined that plaintiff would have marked limitations in his ability to carry out complex instructions and make judgments on complex decisions. AR 1475. She opined that plaintiff would have extreme limitations on his ability to interact appropriately with the public, interact appropriately with supervisors, and interact appropriately with coworkers. AR 1476. She attributed these limitations to plaintiff's personality disorder, in that he is antisocial and unable to get along with others. *Id.*

Dr. Walker further explained that plaintiff "has a lengthy criminal history with no apparent remorse for his victims"; that he makes threats to himself or others; and that his medications kept him "fairly stable" but discontinuing them would likely cause him to decline and be at risk of harming himself or others. AR 1480. She opined that plaintiff has a poor ability to focus and "remember and comprehend simple or complex instructions in a work setting"; that he cannot "relate appropriately to supervisors, colleagues, or the general public"; that he cannot get to or maintain attendance at a full time job consistently; and that he would have difficulty responding to changes in the workplace. *Id.* Finally, she noted that plaintiff can "use public transportation, although he may get into an altercation on the bus." *Id.*

The ALJ rejected Dr. Walker's opinion.[2] AR 28. However, none of the reasons he gave were specific, legitimate, and supported.

The ALJ first found that Dr. Walker had "a minimal basis on which to form an opinion because she reviewed few treatment notes and saw the claimant on a single occasion." AR 28. As noted above, an ALJ may consider these factors when weighing a medical opinion, *see* 20 C.F.R. § 416.927(c), though the ALJ may not reject an examining source opinion solely because the source examined the claimant only once. *See Lester*, 81 F.3d at 830 (ALJ must give specific and legitimate reasons to reject contradicted opinion from examining doctor).

Second, the ALJ found that Dr. Walker's opinion "does not seem entirely consistent with the plaintiff's presentation during her evaluation"—noting that plaintiff "presented as cooperative and had no difficulty following the conversation." AR 28. An ALJ need not accept a medical source opinion if it is contradicted by the source's own notes, *see Buck*, 869 F.3d at 1050; but the ALJ cannot simply conclude that a doctor's opinion was inconsistent with his or her own treatment notes – the ALJ must point to notes that actually contradict the doctor's opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017).

In this case, substantial evidence does not support the ALJ's finding of inconsistency between the physician's conclusion and the physician's notes. Dr. Walker observed plaintiff's affect and mood to be depressed; she noted that plaintiff reported nightmares, auditory hallucinations, and suicidal and homicidal ideation. AR 1479. She also noted several deficient responses in cognitive testing. AR 1480. Dr. Walker applied her psychological training and expertise to these observations and self-reports; the ALJ lacked any basis for superseding her opinion based on his own interpretation of plaintiff's cooperation and ability to follow the

---

[2] The ALJ incorrectly referred to Dr. Walker as "Dr. Lind" throughout the ALJ's decision.

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 7

conversation. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (ALJs "must be careful not to succumb to the temptation to play doctor").

Third, the ALJ similarly found that the social restrictions Dr. Walker opined to "do not seem entirely consistent with" plaintiff's presentation in most treatment records, noting that these showed that plaintiff "typically presented as cooperative and in no acute distress." AR 28. An ALJ may reject a medical opinion based on a lack of support from objective evidence in the record and a determination that conflicting medical opinions are entitled to greater weight. *See* 20 C.F.R. § 416.927(c)(3).

Here, however, the ALJ appears to have selected these findings from among the numerous clinical findings that do support Dr. Walker's opinion. *See* AR 1494, 1497 (plaintiff showed depressed mood and flat affect and attributed heavy sweating to anxiety), 1516 (depressed appearance, impaired abstraction, memory, and attention and concentration; lacks appropriate judgment; mood and affect depressed, constricted, sad, and worried), 1620 (flat affect and suicidal with plan), 2033 (depressed mood, flat affect, and thought content including "hallucinations, paranoia, preoccupation with violence, homicidal, suicidal thoughts with plan"); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]he ALJ improperly cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment.") (citations omitted). Thus, substantial evidence does not support this reason.

Fourth, the ALJ found that the social restrictions Dr. Walker found do not "seem consistent with the claimant's ability to live in communal settings, such as Serenity house, and to regularly use the public bus." AR 28 (citing hearing, AR 1479). This reason is not based on substantial evidence: The ALJ appeared to ignore evidence that plaintiff lives in communal

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 8

settings out of necessity and struggles with their social demands, *see* AR 233, 251, 1479, 1497, 1514, 2243. Further, even if the ALJ's observation were supported, it is unclear that plaintiff's ability to live and take public transportation would be transferrable to working around people in a full-time job. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Finally, the ALJ wrote: "[i]t appears that Dr. [Walker] based much of her opinion on plaintiff's subjective report," which the ALJ found to be unreliable, referring to his earlier discussion of plaintiff's credibility. AR 28. But the ALJ's finding that Dr. Walker based her opinion on plaintiff's self-report is not supported. In *Buck v. Berryhill*, the court held that the ALJ erred when he discounted the examining physician's opinion on the basis that the "opinion was based in part on [the claimant's] self-report" because the examining doctor "also conducted a clinical interview and a mental status evaluation." 869 F.3d 1040, 1049 (9th Cir. 2017). The court held that the interview and mental status evaluation were "objective measures and cannot be discounted as a 'self-report.'" *Id.* The ALJ made the same error here.

Accordingly, the ALJ failed to give a valid, supported reason to reject Dr. Walker's opinions. This error requires reversal.

### 3. Treating Nurse-Practitioner Colleen Davenport, ARNP

In contrast, the ALJ provided adequate reasons for discounting ARNP Davenport's July 2017 opinion, which she based on her treatment of plaintiff during a period of involuntary commitment in April 2017. AR 29, 2442-44. ARNP Davenport marked that plaintiff would have "noticeable difficulty" for more than 20 percent of the workday in several areas of understanding and memory, concentration and persistence, and social interaction, and in responding appropriately to changes in the work setting. AR 2442-43. She further opined that plaintiff would be completely unable to perform work functions on a sustained basis in several areas, including

carrying out detailed instructions, working with or near others, and completing a workday or work week without interruptions. *Id.*

Under the regulations applicable to plaintiff's claim,[3] a nurse practitioner is not an "acceptable medical source[ ]" but an "other source." 20 C.F.R. § 404.1527(f); Social Security Ruling (SSR) 06-03p. An ALJ may disregard an opinion from an "other source" if the ALJ provides germane reasons. *Turner v. Commissioner of Social Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010).

The ALJ rejected ARNP Davenport's opinion for three reasons. One of these reasons was germane and supported: The ALJ discounted ARNP Davenport's opinion in part because she lacked "the full diagnostic picture" of plaintiff's ability to function, as "there is no indication that she reviewed the longitudinal record" and therefore had "not considered the claimant's inconsistent report of symptoms and the extensive evidence of secondary gain," which the ALJ had discussed earlier. AR 29. In evaluating an "other source" opinion an ALJ may consider factors including "[h]ow long the source has known and how frequently the source has seen the individual" and "[t]he degree to which the source presents relevant evidence to support an opinion." SSR 06-03p. The ALJ's consideration of these factors was thus germane to ARNP Davenport's opinion, and the record supports it. While plaintiff cites several factors that would justify giving greater weight to that opinion, Dkt. 12, pp. 18-19, the Court asks only whether the reasons the ALJ did give were germane and supported. *See Turner*, 613 F.3d at 1224.

---

[3] Plaintiff filed his claim before the date when the regulatory amendments affect the consideration of opinions from nurse practitioners. *See* 20 C.F.R. §§ 404.1502(a)(7), 404.1527(a) (still applicable to claims filed before March 27, 2017).

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 10

B. <u>Plaintiff's Testimony on Mental-Health Symptoms</u>

Plaintiff also challenges the ALJ's reasons for discounting his testimony about his mental-health symptoms. The ALJ's decision discounted plaintiff's testimony, because "the notes of plaintiff's treatment do not show that he was thinking about sex offenders or that he has physically assaulted such offenders". AR 23. The ALJ also discounted plaintiff's testimony because of failure to follow treatment recommendations and "secondary gain behavior"—*i.e.*, plaintiff was malingering because he desired to obtain money from the Social Security Administration so that he could afford to purchase or rent a place to live, was exhibiting drug-seeing behavior, and the ALJ found plaintiff's medical records did not support his testimony about severe mental health symptoms. AR 22-24, 27.

The ALJ also discounted plaintiff's statements about avoiding all illegal drug use; the ALJ found plaintiff made inconsistent statements regarding a drug test showing the presence of methamphetamine (implicitly rejecting plaintiff's statement that this test result was a false positive). AR 26.

The Court agrees that the ALJ did not provide specific, clear or convincing reasons to discount plaintiff's symptom testimony. Yet the ALJ asserted that plaintiff was likely malingering, and if there is affirmative evidence to support this allegation of malingering, then the ALJ's decision to discount plaintiff's testimony would be subject to a lesser standard of review.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step

allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

The ALJ is required to identify the testimony that he or she determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). If there is affirmative evidence of malingering, then the ALJ must give reasons that are specific and legitimate. *Carmickle v. Comm'r, Soc. Sec. Admin,* 533 F.3d 1155, 1160 and n.1 (9th Cir. 2008).

Plaintiff did not participate in the first hearing (March 8, 2016) and the hearing was set over; the transcript indicates he had an accident near the hearing room with respect to his bowels,[4] and also was removed from the hearing location by police due to an outstanding warrant for his arrest. AR 40-42. At the second hearing (July 27, 2017), plaintiff testified that on that date he was taking Lithium, Wellbutrin, Gabapentin, Metformin, and Ambien. AR 53. In order to attend the Social Security hearing for the ALJ to consider his case, plaintiff rode more than one bus—from his place of residence at a 50-person shelter in Port Angeles, Washington to another shelter mission near Harborview Hospital, and then to the hearing site, located in Seattle, Washington (total one-way trip of about 85 miles, by road and on a ferry). AR 51-53.

He testified that he was beaten up as a child, and that he witnessed sexual abuse of his sister. AR 59. He testified that his traumatic childhood experiences led to his history of violence toward sex offenders, that he was extremely angry with sex offenders, and that he wanted to avoid any contact with sex offenders. AR 59-60.

---

[4] The plaintiff's medical records show that in early 2017 care providers indicated plaintiff had a history of problems with incontinence, and he was rejected from staying at a shelter because of this issue. AR 1837, 1859.

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 12

When the ALJ asked whether plaintiff stated to mental health professionals that he was trying to obtain Social Security Disability for mental health so that he could "get more money," plaintiff said that was not an accurate statement. AR 61. Plaintiff clarified that he believed the mental health professionals (who made the observation that he was only there for financial gain) were not taking his problems seriously. AR 75. When the ALJ asked plaintiff whether he had stated to mental health professionals that plaintiff wanted to be in an in-patient program because it would help his case for Social Security Disability benefits, plaintiff said that was not an accurate statement. AR 61. When the ALJ asked whether plaintiff said he would harm himself unless the emergency room staff and mental health professionals made a decision to admit him into an in-patient treatment program, plaintiff said it was a partially accurate statement – because he actually would harm himself if he did not get in-patient treatment. AR 61. Plaintiff clarified that he felt suicidal every day. AR 74-75.

Plaintiff admitted that he attacked sex offenders, probably about a dozen times, while he was in prison; he also admitted that he was obsessed with finding sex offenders and trying to alert others to the dangerousness of those offenders. AR 63.

Plaintiff stated that he had been homeless since his release from prison, February 19, 2014. AR 76. When the ALJ asked whether there was a reason that plaintiff overdosed on pills, he responded that because he had perceived there were only two choices in his life—either homelessness (living in a homeless shelter) or going to prison, he concluded "I wanted to die." AR 67.

He stated that he did not have resources, other than $197.00 per month from DSHS and food stamps, which he found insufficient to live on. AR 69. He also stated that it is difficult to comply with dosing on medications unless he has stable housing with structure. AR 74-75. He

did not feel it was appropriate to simply "pull all those medications out on a park bench or something like that". AR 75. Plaintiff testified that he had a false positive test for drug use. AR 78.

The medical record contains ambiguity with respect to the ALJ's finding that malingering was a credibility concern. Unless there is affirmative evidence of malingering, the ALJ is required to have clear and convincing evidence from which to discount the plaintiff's credibility. In this case, the medical records show suicide attempts and admissions for voluntary and involuntary in-patient treatment after plaintiff was released from prison in February of 2014, and that he was involuntarily committed in April 2017—about three months before his second Social Security hearing (held in July 2017). *E.g.*, AR 2386-96, 2406-08 (petition for involuntary commitment, stating that plaintiff was likely to be a threat of serious harm to self or others, and was gravely disabled; plaintiff had overdosed on drugs and experienced an acute respiratory failure, 4-4-2017).

The medical professionals who noted malingering as a possibility did not describe any specific medical information nor did the ALJ describe specific evidence as to why malingering, drug-seeking, secondary gain to try and obtain more money, and manipulation by attempting or threatening suicide as a means to obtain housing, was thought to be a primary motivating reason for plaintiff's behavior – rather than a symptom of plaintiff's mental illnesses. *See Garcia v. Colvin,* 741 F.3d 758, 761-62 (7th Cir. 2013) (ALJ should not make a finding of malingering unless the ALJ specifically asks plaintiff why he or she failed to obtain medical care); *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir. 2014) (desire to obtain disability benefits, standing alone, is not enough to discount the plaintiff's testimony). Regardless whether the Court uses the clear and convincing evidence standard, or the legitimate and specific standard, for determining

whether the ALJ's reasons were legally valid to make an adverse credibility finding, the Court finds that under either standard the ALJ committed an error that is not harmless.

There is some documentation concerning possible illicit drug use by plaintiff—based on urine screening results that were unconfirmed—for marijuana, MDMA, and methamphetamine. Yet those test results were made for medical reasons, with the caveat that they had not been confirmed, and should not be used for legal purposes. AR 1871, 1872, 2431.

In addition, the plaintiff was homeless and had difficulty managing his symptoms. For example, in April 2017, he was evaluated at Harborview Hospital in Seattle, experiencing auditory hallucinations with voices telling him to kill sex offenders, and he stated that he wanted to blow things up. AR 2386-2408. The medical notes also show that there was a fear that plaintiff would set fire to homeless shelters where he believed sex offenders were living. AR 2386-90.

The diagnosis of malingering was noted in the medical evaluation done in March 2017, when Dr. Gilbert and ARNP Stewart stated that they thought plaintiff threatened suicide in order to obtain housing; they noted plaintiff had a history of manipulation and "feel this is actually malingering with antisocial behavior." AR 1849-1856. Yet Julie Riggins, MSW, also noted that the Mission would not accept plaintiff because he had a history of incontinence (AR 1859); and plaintiff responded to Social Worker A. Casale by stating that his incontinence at the Mission was an accident that happened at night. AR 1837. Plaintiff's struggle with his mental illness and inability to find shelter was being interpreted as "malingering/homelessness" (AR 1848) by some care providers in March 2017, but the ALJ should also have considered that plaintiff's failure to comply with treatment may be a symptom of bipolar disorder and depression. *See Wake v. Commissioner of Social Sec.,* 461 Fed. Appx. 608 (9th Cir. 2011).

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 15

The ALJ did not have substantial evidence from which to find that plaintiff was not credible with respect to "exaggeration of symptoms", or manipulation in order to obtain benefits, or in order to obtain housing. A person who is bipolar, suffers from suicidal ideation and paranoia about sex offenders, and who is homeless with incontinence problems, would be justified in trying to obtain resources to live a healthier life. *See Cha Yang v. Commissioner,* 488 Fed. Appx. 203, 205 (9th Cir. 2012) (genuine financial need that motivates plaintiff to seek disability benefits is not a reason to find that plaintiff is not credible). The ALJ's reasoning does not meet the "specific and legitimate" standard, considering the record as a whole. *See Price v. Colvin,* 974 F.3d 836 (7th Cir. 2015) (plaintiff who is mentally ill and applies for Social Security benefits must visit psychiatrists or other mental health experts in order to build evidence showing that he or she has a valid case—the seeking of treatment should not be relied upon as evidence that plaintiff is not credible).

The ALJ also mentioned that plaintiff may have been selling drugs that he was given to treat his mental illness. AR 22, 26, 61-62. And, the Commissioner asserts that plaintiff had "red eyes, seemed "stoned", during a medical visit, *see* AR 1494. The evidence supporting these reasons is less than substantial, and the Court finds that the ALJ's findings in this regard should also be reversed. Non-compliance with treatment recommendations may be part of the bipolar disorder, and the ALJ should consider possible alternative explanations. *See Jelenek v. Astrue,* 662 F.3d 805, 814 (7th Cir. 2011); *Wake v. Commissioner of Social Sec.,* 461 Fed. Appx. 608 (9th Cir. 2011). And, plaintiff's history of criminal behavior—though disturbing—should not, standing alone, be used by the ALJ to support a finding that plaintiff's testimony is not credible. *See Ghant v. Bowen,* 930 F.2d 633 (8th Cir. 1991) (robbery conviction and evidence that plaintiff

had used two Social Security Numbers to conceal his prison record so that he could get a job, were not valid reasons to find plaintiff's symptom testimony less credible).

C.  Remand with Instructions for Further Proceedings

Plaintiff asks that the Court remand for the Commissioner to award benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (internal quotation marks omitted) (applying three-step credit-as-true test).

Although plaintiff contends that "the proper remedy for the errors in the ALJ's decision is remand for payment of benefits," he does not address how this case fulfills each of the required elements to remand for benefits. Dkt. 12, p. 19 (capitalization altered); *see Trevizo*, 871 F.3d at 682-83. The Court cannot conclude that "further administrative proceedings would serve no useful purpose." *See Trevizo*, 871 F.3d at 682-83.

The ALJ on remand should reevaluate the medical opinion evidence—and take new evidence if necessary—regarding all of plaintiff's mental health conditions and their effects on plaintiff's functioning. Because the ALJ must rely in part on an assessment of the medical evidence in weighing plaintiff's testimony regarding his symptoms and limitations, the ALJ (on remand) may also reassess whether plaintiff's testimony is (or is not) credible with respect to consistency (or inconsistency) with the medical opinion evidence.

CONCLUSION

Based on the above analysis, the Defendant's decision to deny benefits is REVERSED and this matter is REMANDED to the Social Security Administration for further proceedings.

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 17

Dated this 7th day of August, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS - 18